**Brian Allen CARTER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–02–00183–CR.**

Court of Appeals of Texas,
Waco.

March 17, 2004.

Rehearing Overruled May 5, 2004.

Bruce A. Hoffer, Beaumont, for appellant.

Tom Maness, Jefferson County Criminal Dist. Atty., Wayln G. Thompson, Jefferson County Asst. Dist. Atty., for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

Brian Allen Carter appeals the trial court's denial of his motion for postconviction DNA testing under Chapter 64 of the Code of Criminal Procedure of crime scene evidence from the 1992 murder of Elvira Waddell Gonzales. *See* TEX.CODE CRIM. PROC. ANN. arts. 64.01–.05 (Vernon Supp. 2004.) Carter did not show by a preponderance of the evidence that a reasonable probability exists that exculpatory DNA tests would prove his innocence. Therefore, we will affirm.

## BACKGROUND

On December 12, 1994, Brian Allen Carter pled guilty to murder with a deadly weapon[1] and was sentenced to fifty years' imprisonment, pursuant to a plea bargain agreement. He appealed the trial court's denial of his motion to suppress his confession. The court of appeals affirmed and the Court of Criminal Appeals refused Carter's petition for discretionary review. At the time of his plea, Carter was aware that Type B and Type O blood had been found at the crime scene and that he and Wheeler, his co-conspirator, both had Type A blood. Carter also knew that hair found in the victim's hand was microscopically dissimilar to Carter's.

On June 8, 2001, Carter filed his Pro Se Motion for DNA testing under Chapter 64 of the Code of Criminal Procedure. In his affidavit, Carter asserts that "DNA testing will prove his innocence and implicate Mr. Robert Troy Wheeler...." Robert C. Benjamin, an Associate Professor of Biological Sciences at the University of North Texas, reviewed information provided to him regarding the crime and recommended DNA testing of the butcher knife used to murder Waddell, noting that because there is some evidence of a struggle, the murderer may also have been cut. He also recommended reexamining the remaining four pieces of evidence—a credit union receipt, a baby's shirt, pieces of a yellow coffee cup, and a woman's purse—for the presence of DNA-testable material. The trial court initially ordered DNA testing on all five items. But after the State filed a motion for reconsideration, the court held another hearing on May 10, 2002, and withdrew its previous order for DNA testing and denied Carter's request. It is from this denial that Carter appeals.

## DNA TESTING

Article 64.03 permits a court to order DNA testing if the movant establishes by a preponderance of the evidence that "a reasonable probability exists that the person would not have been prosecuted or convicted if exculpatory results had been obtained through DNA testing." The movant must also establish that: (1) evidence still exists which can be subjected to DNA testing; (2) the evidence has been subjected to a chain of custody sufficient to establish it has not been tampered with; (3) identity

---

1. The facts of the underlying case are these: Robert Troy Wheeler and Carter conspired to kill to Waddell, the mother of Wheeler's daughter, who lived in Nederland, Texas. Disguised with a fake mustache and a fake beard, respectively, Wheeler and Carter went to her home under pretenses of using her telephone. Wheeler hit her over the head with a coffee mug and held her at gunpoint while Carter repeatedly stabbed her in the chest and back. Wheeler's infant daughter was asleep in the next room. Waddell was found with a butcher knife from her own kitchen buried in her back.

was or is an issue in the case; and (4) the request for DNA testing "is not made to unreasonably delay the execution of sentence or administration of justice." *Id.* art. 64.03(a)(2)(A).

In a postconviction DNA appeal, we use a bifurcated standard of review. *Rivera v. State,* 89 S.W.3d 55, 59 (Tex. Crim.App.2002) (citing *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997)). Thus, "we afford almost total deference to a trial court's determination of issues of historical fact and application-of-law-to-fact issues that turn on credibility and demeanor, while we review *de novo* other application-of-law-to-fact issues." *Id.* Under this standard, we review *de novo* "the ultimate question of whether a reasonable probability exists that exculpatory DNA tests would prove innocence." *Id.*

The Court of Criminal Appeals concluded in its first appeal under Chapter 64 that a movant need not establish actual innocence to obtain DNA testing. *Kutzner v. State,* 75 S.W.3d 427, 438–39 (Tex. Crim.App.2002). As the Court stated, Chapter 64 "does not . . . require convicted persons to prove their innocence before a convicting court may order DNA testing under Article 64.03. It merely requires convicted persons to show a reasonable probability exists that exculpatory DNA tests would prove their innocence." *Id.* (footnote omitted). A movant does not satisfy this requirement however if exculpatory test results "would merely muddy the waters." *Id.* at 439.

Texas courts have consistently held that a movant does not satisfy his burden under article 64.03 if the record contains other substantial evidence of guilt independent of that for which the movant seeks DNA testing. *See Whitaker v. State,* 2004 WL 63981, *3 (Tex.Crim.App. Jan.14, 2004); *Skinner v. State,* 122 S.W.3d 808, 811 (Tex. Crim.App.2003); *Rivera,* 89 S.W.3d at 60; *Kutzner,* 75 S.W.3d at 437–39; *Torres v.*

*State,* 104 S.W.3d 638, 640–41 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd); *In re Fain,* 83 S.W.3d 885, 889 (Tex.App.-Austin 2002, no pet.).

## ANALYSIS

The record contains affidavits from two witnesses who heard about the murder from Troy Wheeler. Their statements implicate both Wheeler and Carter and closely match Carter's confession, which is in the record. The record also contains numerous photos of the blood-soaked crime scene, including a particularly graphic snapshot of the victim with a butcher knife buried deeply in her back. At the hearing and in affidavits and pleadings, Carter requested testing and asserted that such testing would reveal Wheeler's DNA, notwithstanding the facts that only Type O and Type B blood were found at the crime scene and Wheeler had Type A blood. Moreover, in this case, the absence of Carter's DNA on the knife and other items of evidence would not necessarily show him to be guiltless. Finally, Carter points to the dissimilarity between his hair and the hair sample recovered from the victim's hand, a fact known to him at the time he pled guilty. But Carter's confession reveals that prior to driving to her house to commit the murder, he donned a fake beard and Wheeler disguised himself with a fake mustache.

Because the record contains substantial evidence of guilt independent of that for which Carter sought DNA testing, we find no error in the trial court's denial of his request. *See id.* We overrule Carter's only issue.

## CONCLUSION

Having overruled Carter's only issue, we affirm the order denying DNA testing.